IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(SOUTHERN DIVISION)

| | |
|---|---|
| HAROLD SULLIVAN, | ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | )     Civil Case No.: 8:19-cv-00300-GLS <br> ) |
| WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, | ) <br> ) <br> ) |
| Defendant. | ) <br> ) |

## MEMORANDUM OPINION

Pending before this Court is a motion for summary judgment filed by Defendant Washington Metropolitan Transit Authority ("WMATA"). (ECF No. 30). Plaintiff Harold Sullivan ("Plaintiff") filed an opposition, and WMATA has filed its reply. (ECF Nos. 31, 32). The matter has been fully briefed. Upon review of the pleadings and the record, the Court finds that no hearing is necessary. *See* L.R. 105.6. For the reasons set forth below, Motion for Summary Judgment is GRANTED.

### I.     Procedural and Factual Background

Plaintiff filed his Complaint on December 6, 2018, alleging that he suffered injuries following a fall on February 3, 2016. Plaintiff maintains that his fall occurred due to WMATA's negligence. (ECF No. 1, Exhibit 1).[1]

---

[1] On January 31, 2019, WMATA filed its answer and notice of removal from Prince George's County Circuit Court to this federal court. (ECF No. 1).

The following facts are undisputed. On the morning of February 3, 2016, before 8:49 a.m., Plaintiff arrived at the Branch Avenue Metrorail station,[2] operated by WMATA, in order to catch the train to work.[3] (Deposition of Plaintiff Harold Sullivan, p.2, lines 4-11, "Sullivan Dep. 2:4–11"). By the time that Plaintiff arrived there, it had been raining for a significant period of time.[4] Plaintiff paid his fare, entered the station, and walked down the stairs to the platform. (Sullivan Dep. 20:3-16). As Plaintiff descended the stairs, he heard the train announcement, and also noticed that there was a train waiting at the platform. (Sullivan Dep. 23:1-10). Plaintiff was unaware of how long the train was there. (Sullivan Dep. 22:2-21). Plaintiff was walking at a brisk pace as he approached the waiting train. (Sullivan Dep. 53:5-7; Def.'s Ex. 6, p. 5). When Plaintiff approached the door of the waiting train, he decided to go to the next train car and pivoted to the right in order to do so. (Sullivan Dep. 23:3-13). As Plaintiff pivoted to the right, his right foot began to slide from under him and he fell back doing "like an end zone split dance." (Sullivan Dep. 23:13-17). Plaintiff claims he fell on the granite edge[5] of the platform due to it being wet because of the rain. (Sullivan Dep. 25:15-20). Two men helped Plaintiff to stand up and then he boarded the train. (Sullivan Dep. 28:11-20). At approximately 8:49 A.M., Plaintiff arrived at the L'Enfant Plaza Metrorail station and reported the incident to Mr. Smith, the on-duty station manager. (Sullivan Dep. 30:16-21). Plaintiff claims he suffered a broken fibula as a result of the fall. (Sullivan Dep. 35).

---

[2] The Branch Avenue Metrorail station is an outdoor station, which is partially covered by an open, one-sided canopy/overhang. (ECF. 30-1, p. 1; ECF No. 31-1, p. 1).
[3] Neither party identifies the time that the incident transpired. However, the logical inference is that the event occurred before 8:49 a.m., when Plaintiff reported the incident.
[4] According to the NOAA Report on February 3, 2016, it began to rain at 4:22 A.M. (Plf.'s Exhibit 4; *See also* ECF No. 1, p. 3).
[5] The granite edge is the grey tile closest to the train. (Pickney Dep. 34:15-36-14; Plf.'s Exhibit 2).

## II. Standard of Review

Motions for summary judgment shall be granted only if there are no genuine issues as to any material fact, such that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of showing that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(a); *Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987) (internal citation omitted). The burden can be satisfied through the submission of, e.g., pleadings, depositions, answers to interrogatories, admissions, and affidavits. *Celotex Corp.*, 477 U.S. at 323; *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984). To defeat motions for summary judgment, on the other hand, the nonmoving party cannot simply cast "metaphysical doubt" on the material facts, but rather must provide specific facts demonstrating a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing Fed. R. Civ. P. 56(e)).

The Court must construe the facts and documentary materials submitted by the parties, including the credibility and weight of particular evidence, in the light most favorable to the party opposing the motions. *Masson v. N.Y. Magazine, Inc.*, 501 U.S. 495, 520 (1991) (citing *Anderson*, 477 U.S. at 255)). A mere scintilla of evidence is insufficient to create an issue of material fact. *See Barwick*, 736 F.2d at 958–59 (citing *Seago*, 42 F.R.D. at 632). Summary judgment is inappropriate if any material factual issue "may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## III. Analysis

To establish a cause of action for negligence in Maryland, a plaintiff must prove four elements: (1) defendant was under a duty to protect the plaintiff from injury; (2) the defendant

breached that duty; (3) the plaintiff suffered actual loss or injury; and (4) the loss or injury proximately resulted from the defendant's breach of the duty. *See Todd v. Mass Transit Admin.*, 373 Md. 149, 155, 816 A.2d 930 (Md. 2003) (internal quotations and citations omitted). Negligence is a relative concept and must be decided on the facts of each particular case; ordinarily, it is a question of fact to be determined by the jury. *See Fowler v. Smith*, 240 Md. 240, 246 A.2d 549 (1965).[6]

Under Maryland law, a possessor of land must exercise reasonable care to "protect [an] invitee from injury caused by an unreasonable risk," which the invitee would be unlikely to perceive in exercising ordinary care for his/her own safety, and about which the owner knows or could have discovered in the exercise of reasonable care. *Casper v. Chas. F. Smith & Son, Inc.*, 316 Md. 573, 582, 560 A.2d 1130 (Md. 1989); *see also Blood v. Hamani P'ship*, 143 Md. App. 375, 384, 795 A.2d 135 (Md.Ct.Spec.App. 2002)(plaintiff must proffer evidence of a dangerous condition, awareness of the landowner, and failure to exercise ordinary care to cure the defect).

Common carriers, such as WMATA, owe an elevated duty of care to passengers. Specifically, WMATA owes passengers "the highest degree of care to provide safe means and methods of transportation for them." *Todd*, *supra*, 373 Md. at 156. A common carrier, however, is not an insurer of the safety of its passengers; rather, it is bound to deliver passengers to their destination as expeditiously as possible, consistent with safety. *Mass Transit Admin. v. Miller*, 271 Md. 256, 259, 315 A.2d 772 (Md. 1974).

---

[6] In *Fowler,* the Court of Appeals of Maryland opined that "meager evidence of negligence is sufficient to carry the case to the jury. The rule has been stated as requiring submission if there be any evidence, however slight, *legally sufficient* as tending to prove negligence, and the weight and value of such evidence will be left to the jury." *Fowler*, 240 Md. at 246 (emphasis in original). Only when reasonable minds cannot differ when faced with the undisputed facts and all favorable inferences drawn in favor of the party trying to prove negligence does the question of negligence become one of law. *Id.* at 247.

4

In this case, Plaintiff alleges that WMATA breached its heightened duty of care when it failed to maintain the platform in a safe condition and failed to warn Plaintiff of the dangerous conditions present on the platform. (ECF No. 1-1). WMATA argues that summary judgment should be granted in its favor because Plaintiff has failed to establish that WMATA had actual or constructive notice of the condition for sufficient time to permit WMATA to discover the condition. (ECF 30-2, pp. 4-6). Alternatively, WMATA argues that even if it had actual or constructive notice, it did not have the duty to warn Plaintiff of an open and obvious condition. (ECF 30-2, p. 6-7).

In this case, the alleged dangerous condition is the wet/slippery platform due to the rain. In order to prevail on his claim of negligence, Plaintiff must prove either that defendant WMATA created the dangerous condition that caused his fall, or that WMATA had actual or constructive notice of that condition. Here, Plaintiff does not appear to pursue a theory that WMATA directly created the dangerous condition. Instead, Plaintiff's negligence claim turns on whether he can establish that Defendant had actual or constructive knowledge of the slippery nature of the platform prior to his fall.

Plaintiff bears the burden of showing that the possessor of land "had actual or constructive knowledge of [the existence of the dangerous condition]" prior to his injury. *Lexington Mkt. Auth.v. Zappala*, 233 Md. 444, 446, 197 A.2d 147 (1964). *See also Maans v. Giant*, 161 Md. App. 620, 627, 871 A.2d 627 (2005). In addition, WMATA has a duty to inspect and take reasonable precautions against foreseeable dangers on its premises. *Tennant v. Shoppers Food*, 115 Md. App. 381, 388, 693 A.2d 370 (1997). However, although WMATA has a duty to inspect its premises, it does not have a duty to "**continuously** inspect" its premises. *Id.* at 390. (emphasis added). (quoting *Lexington Mkt. Auth.v. Zappala*, 233 Md. 444, 446, 197 A.2d 147 (1964)).

In this case, Plaintiff has failed to produce evidence to support an inference that WMATA had actual notice of the platform's condition. In contrast, there is evidence that WMATA did not have actual notice. Specifically, according to William Martin (Risk Management Quality Control Manager of WMATA), he reviewed WMATA's safety and claims from the Branch Avenue Station for February 3, 2016 between opening and closing, and he stated that "WMATA received no reports of any incidents, accidents, or occurrences, which relate to the condition of the train platform" except for Plaintiff's claim. (ECF No. 30-10; Def.'s Exhibit 8). In addition, there is no testimony from any WMATA employee that he/she observed the condition of the platform prior to Plaintiff's fall. Accordingly, there is no evidence that WMATA had actual notice of the purportedly slippery condition of the platform prior to Plaintiff's fall.

In order to prove "constructive notice" of a dangerous condition, Plaintiff must show that "the condition existed for a length of time sufficient to permit a person under a duty to discover it if he had exercised ordinary care." *Rawls v. Hochschild*, 217 Md. 113, 117, 113 A.2d 405 (1955). Whether there has been sufficient time for a business proprietor to discover a dangerous condition depends on the circumstances such as "nature of the danger, the number of persons likely to be affected by it, the diligence required to discover or prevent it, opportunities and the means of knowledge, the foresight which a person of ordinary care and prudence would be expected to exercise under the circumstances, and the foreseeable consequences of the conditions." *Deering Woods Condo. Ass'n v. Spoon*, 377 Md. 250, 264, 833 A.2d 17 (2003). *See also Rehn v. Westfield Am.*, 153 Md. App. 586, 598, 837 A.2d 981 (Md.Ct.Spec.App.2003).

Regarding constructive notice, Plaintiff asserts that Henry Pratt,[7] WMATA's on-duty station manager at the time of the incident, should have known that when it rained the platform underneath the open canopy/overhang would become slippery. (ECF No. 31-1, p. 10). Thus, the argument continues, WMATA should have put up "Wet Floor- Caution" cones on the platform prior to the time of Plaintiff's fall because the danger was peculiarly foreseeable to WMATA, but not to the plaintiff. (*Id.*).[8]

It is undisputed that on the morning of Plaintiff's incident it had been raining for a significant time period. However, the mere existence of rain does not necessarily lead to the inference that the water on the platform created a dangerous condition and also that it had been there long enough to enable WMATA, in the exercise of ordinary care, to discover it and address it. The issue is not whether its existence created a dangerous condition, and whether WMATA knew if it was raining prior to the incident, but, rather, whether WMATA knew about the dangerous condition of the platform for a sufficient amount of time to exercise ordinary care to remedy the condition or to warn its patrons about it.

*Rawls v. Hochschild* is instructive. In *Rawls,* while it was raining, a customer was waiting for the store to open. Upon entry to the store, the customer fell down the interior stairs. *Rawls,* 217 Md. at 116. The Court found that the customer could not establish either that the water was present prior to her fall, or that the water was present because of some act of the defendant. *Id*. at

---

[7] Mr. Pratt is not a current WMATA employee; he retired after the 2016 incident. Mr. Pratt was subpoenaed to be deposed, however, he evaded service. (ECF No. 32, p. 5). Neither Plaintiff nor Defendant ever sought assistance in compelling Pratt's attendance at a deposition. (*Id.*)

[8] Plaintiff failed to provide any specific evidence that indicates the time that Mr. Pratt, or any other WMATA employee, placed the "Wet-Floor Caution" cones throughout the station. Although Plaintiff relies on a WMATA report entitled "Chronology of Events Notification" to prove its claim, the report provides no specific information such as the when, where, and why the "Wet-Floor Caution" cones were displayed. (Plf.'s Ex. 11). Finally, Plaintiff does not dispute that the cones may have gone up after his fall. (ECF No. 31-1, p.11, ftn.4). Thus, there is no genuine dispute related to the display of the "Wet-Floor Caution" cones.

122. The court further reasoned that even if water were in the stairwell before Rawls fell, Rawls failed to provide evidence regarding how long it had been there, and whether its presence warrant an inference that it was there long enough for the storeowner to discover the condition. *Id*. at 123. The lesson from *Rawls*, then, is that a plaintiff must establish how long a dangerous condition existed before an incident.

In this case, WMATA concedes that there was water on the platform due to the rain (ECF No. 30-1, p. 2; ECF No. 31-1, p. 9). However, there is no evidence regarding how long the water had been on the platform before Plaintiff fell, nor is there any evidence of how slippery the platform was. In addition, there is some evidence that when the Branch Avenue Station opened on the morning of the incident, Mr. Pratt did a visual inspection of station platform. (Plf.'s Ex. 11, p. 3). However, there is no testimony from him, so the court is unable to determine the nature of the inspection done, and when it was done. Thus, the relevance of the visual inspection is unclear.

On the other side of the evidentiary ledger, there is evidence from WMATA that, between 4:00 a.m. and 12:00 p.m. on the day of the incident, 5,115 people entered, and 355 people exited the station via the fare gates, (ECF No. 30-9; Plf's Ex.7), and that no other incidents were reported. (ECF No. 30-10; Plf's Ex.8). Based on the foregoing, the Court finds that there is no evidence of when the allegedly slippery condition arose. The Court further finds that Plaintiff has not provided evidence to support the inference that WMATA had knowledge of it, or that WMATA had sufficient time to exercise ordinary care to remedy it or warn patrons about it.

In his opposition to Defendant's summary judgement motion, Plaintiff relies on *WMATA v. Barksdale*, 965 A.2d 16 (D.C. 2009), and argues that the danger was "peculiarly foreseeable" to WMATA but not the plaintiff; therefore, WMATA has a duty to warn. (ECF No. 31-1, p.10). Plaintiff's reliance on *Barksdale* is misplaced. In *WMATA v. Barksdale*, the escalator at the station

was wet due to the melting snow. Barksdale arrived at the station and noticed the ground was "slushy" due to the snow. As she was riding down the escalator, she took a step down and slipped and fell. Evidence was presented that WMATA was aware of prior falls on the escalator. The court found that although the evidence demonstrated that Barksdale should have been aware of the conditions, WMATA had a distinct appreciation of the condition because, unlike Ms. Barksdale, it was aware of prior WMATA escalators incidents or accidents. *Id*. at 19, 25. Therefore, it was peculiarly foreseeable to WMATA that a hazardous condition existed on the escalator. *Id*. at 26. Moreover, the condition of the escalators was not "open and obvious" to Barksdale due to her "lack of appreciation of the unreasonably dangerous hazard risk that the condition posed on the escalator as opposed to other surfaces." *Id*. at 25.

In the instant case, Plaintiff's sole "WMATA employee witness" is Clarence Pickney. Mr. Pickney was at work at the Branch Avenue Station at 6:30 p.m., which was several hours after the incident. (Deposition of Clarence Pickney, p. 26, lines 5-15, "Pickney Dep. 26:5-15;" Plf.'s Exhibit 9). Mr. Pickney testified that based on his experience of working at outdoor metro stations, such as Branch Avenue, the platform underneath the covered area can get wet and slippery when it rains. (Pickney's Dep. 22:18-23:4; Plf.'s Exhibit 9). Interestingly, Mr. Pickney testified that, besides Plaintiff's fall, he was not aware of any other incidents related to a slippery platform at WMATA metro stations. (Pickney's Dep. 31:18-32:4). Unlike the evidence presented in *WMATA v. Barksdale*, Mr. Pickney stated he was not aware of any other falls at the WMATA metro stations. Plaintiff presented no other testimony that could potentially corroborate that WMATA had a "distinct appreciation" for falls due to a slippery platform. Even Mr. Pickney stated that he was unaware that the granite edge, the spot where Plaintiff fell, could get slippery because he never noticed it. (Pickney's Dep. 34:15- 36:14; Def.'s Exhibit 9). Therefore, it was not "peculiarly

9

foreseeable" to WMATA that a hazardous condition existed when it rained on February 3, 2016. Plaintiff has failed to provide any evidence that would support a reasonable inference that WMATA had a distinct appreciation of a dangerous condition and an awareness of prior falls.

Finally, WMATA alternatively argued that even if it had notice of the platform's dangerous condition, the condition was open and obvious; therefore, it had no duty to warn Plaintiff. (ECF No. 30-2, pp. 6-7). A condition is open and obvious when it is "apparent to and would be recognized by a reasonable person in the position of the visitor, exercising ordinary perception, intelligence, and judgment." WMATA has a duty to warn of known **hidden** dangers, not open and obvious ones. *Ramseur v. U.S.*, 587 F.Supp.2d 672, 684 (2007). (citing to *Yaniger v. Calvert Bldg. & Constr. Co.*, 183 Md.285,288,37 A.2d 263,264 (1944)) (emphasis added). Plaintiff has the duty to look and see what is around him. *Casper, supra,* 560 A.2d at 1130. Plaintiff has an intimate familiarity with the Branch Avenue Station because he has commuted to and from the station for the past six years. (Sullivan Dep. 11:2-15). Consequently, it is reasonable to conclude that Plaintiff is aware that the platforms at the station can become wet due to rain because it is an outdoor station. Even if it was his first visit to the station, a reasonable person would realize that an outdoor station platform can become wet and potentially slippery; therefore, ordinary care must be exercised. Although Plaintiff contends that his attention was distracted due to the waiting train, it does not negate his duty to look and see what is around him. Therefore, Plaintiff should have appreciated the "open and obvious" nature of the platform and exercised due care while getting on the train.

In sum, Plaintiff has failed to advance specific facts that permit an inference that Defendant had actual or constructive knowledge of the dangerous condition of the platform prior to his fall. Alternatively, Plaintiff has failed to establish that the allegedly dangerous condition was not open

and obvious. Therefore, the Court finds that there is no genuine dispute of any material fact for trial.

## IV. Conclusion

For the foregoing reasons, Defendant WMATA's Motion for Summary Judgment is **GRANTED**. (ECF No. 30). Judgment shall be entered in favor of the Defendant and the case shall be closed.

Dated: February 26, 2020

/s/
The Honorable Gina L. Simms
United States Magistrate Judge